IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2021

## STATE OF TENNESSEE v. CRYSTAL MICHELLE RICKMAN

**Appeal from the Circuit Court for Madison County**
**No. 19-743       Donald H. Allen, Judge**

_____

### No. W2020-00901-CCA-R3-CD

_____

A Madison County jury convicted the Defendant, Crystal Michelle Rickman, of aggravated assault and domestic assault.  The trial court imposed an effective sentence of six years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the trial court erred by denying an alternative sentence.  We affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ. joined.

Jeremy B. Epperson, District Public Defender; Gregory D. Gookin, Assistant District Public Defender, Jackson, Tennessee, for the appellant, Crystal Michelle Rickman.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; Joshua B. Duggan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I.  Facts

This case arises from an April 2019 aggravated assault and domestic assault, during which the Defendant punched and strangled her roommate and companion, Betty Mauldin, in their shared home.  The Defendant was arrested, indicted for these offenses by a Madison County grand jury, and placed on bond awaiting trial.  After she failed to appear in court in December 2019, the Defendant's bond was revoked, and she was subsequently tried in February, 2020.

At trial, Deputy Eric Bays of the Madison County Sheriff's Office testified that he had been dispatched to the Defendant's residence after midnight on the evening of April

29, 2019.  On arrival, Deputy Bays was met by Jayla LeShae Cole, whom he observed to be visibly shaking and crying.  Deputy Bays said that Ms. Cole appeared frightened, noting that she was trying to speak quietly and her voice was shaking.  Deputy Bays entered the residence and met Betty Mauldin, who also appeared to be frightened and had visible injuries to her eye, face, lip, and neck.  Deputy Bays testified that Ms. Mauldin's injuries included several cuts on her face and bruises on her neck and around her eye.  Deputy Bays then proceeded into the residence to a bedroom where he contacted the Defendant, who was in bed but appeared to have just laid down, since no covers were out of place and "not a strand of [the Defendant's] hair [was] out of place."  Deputy Bays testified that the Defendant did not seem surprised by the officer's presence and  immediately engaged in conversation with him.  The Defendant denied that there had been a fight or argument, or that any assault had occurred.

Deputy Bays documented Ms. Mauldin's injuries with various photographs of her head and neck area, along with photographs of spots of blood on a recliner sofa.

On cross-examination, Deputy Bays confirmed that he had seen blood only on the couch, and that he had not seen any blood on the Defendant or her clothing.  Deputy Bays confirmed that he had obtained a written statement from Ms. Mauldin and that, although she was upset by her arrest, the Defendant had not attempted to resist or become violent with him.

Betty Mauldin testified that she had been in a relationship with the Defendant for four years and that they had lived together at their shared residence for two or three years.  Ms. Mauldin further testified that, at the time of the assaults, Ms. Mauldin's granddaughter Jayla LeShae Cole was also living at the residence.  Ms. Mauldin recounted that on the evening of April 29, 2019, she was at home alone watching television and sleeping on a sectional recliner sofa when the Defendant arrived home.  Ms. Mauldin awoke and could tell immediately that the Defendant had been drinking.  The Defendant began fighting with Ms. Mauldin, including picking up an end table and throwing it at her.  This fight continued for some time in areas ranging across the living room.

Ms. Mauldin testified that at the time of the incident she had already decided to end her relationship with the Defendant because she wanted to end the fighting and arguing around her granddaughter.  After the Defendant went to bed, Ms. Mauldin and her granddaughter discussed leaving and where they might go but were afraid that any such action would wake the Defendant and result in "more drama."  Ms. Mauldin testified that her granddaughter called the police to enable the two to leave with their things.  Ms. Mauldin testified that she and her granddaughter had been sneaking calls to find a place to go and did not want to wake the Defendant.  She confirmed that photographs responding officers had taken that night of injuries to her face, lip, eye, and throat were sustained in

2

the fight with the Defendant and that the neck injuries documented in the photographs were the result of the Defendant choking her. Ms. Mauldin confirmed that she had given a written statement of the incident to Deputy Bays.

On cross-examination, Ms. Mauldin confirmed that Ms. Cole was eighteen years old and had lived with Ms. Mauldin and the Defendant for about two months at the time of the incident. Ms. Mauldin further testified that she had been sleeping in the recliner when the Defendant returned home from her mother's residence nearby and that the Defendant had awoken her by starting an argument, "hollering and screaming," and then becoming physical, including punching Ms. Mauldin with her fist and choking her with her hands. She recounted that, while she had not lost consciousness, the choking did cause her to "lose her breath." Ms. Mauldin further confirmed that her granddaughter was not present at the time of the incident but had returned at least an hour after.

Based on this evidence, a Madison County jury convicted the Defendant of aggravated assault and domestic assault. At the sentencing hearing, the State conceded that the State had not filed a Notice for Enhanced Punishment and, thus, the Defendant could only be sentenced as a Range I, standard offender. The trial court noted that the Defendant had an extensive criminal history, including sixteen prior felony convictions and twenty-two prior misdemeanor convictions, with at least five prior convictions involving domestic or other violence. Her recent history included convictions for aggravated assault and domestic assault, which she committed while she was out on bond pending trial for the offenses in this case. After the arrest for that offense and her release on bond pending trial, the Defendant then failed to appear, resulting in the trial court revoking her bond. The trial court noted that the Defendant had, on several occasions, committed new offenses after being placed on probation by various courts. The trial court summarized its review of the Defendant's criminal record as:

> [T]he Court finds that the interest of society (in) being protected from the Defendant's possible future criminal conduct is great. . . . I'm trying to protect other victims. It concerns me that she has victimized a lot of people over the last 20-something years, you know, domestic violence convictions on five different occasions. So, for all those reasons, the Court finds that she is not a good candidate for alternative sentencing."

The trial court sentenced the Defendant to a sentence of six years in the Tennessee Department of Correction for the Class C felony of aggravated assault, and to eleven months and twenty-nine days for the Class A misdemeanor of domestic assault, with these sentences to run concurrently. It denied her request for an alternative sentence. On appeal, the Defendant contends that the trial court erred by denying her an alternative sentence.

## II. Analysis

On appeal, the Defendant contends that the trial court erred by denying an alternative sentence because the sentence imposed was ten years or less and a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing. *See* T.C.A. § 40-35-303(a) and T.C.A. § 40-35-102(6) (2019). The Defendant further contends that, while she had previously been convicted of several felony and misdemeanor offenses, most of those convictions were remote in time and her most recent felony convictions resulted in sentences served in prison. For that reason, the Defendant contends she has had no recent opportunity to prove she could adhere to the terms and conditions of supervised probation, and therefore asks this court to modify her sentence to one of probation or Community Corrections.

The State counters that the trial court acted well within its broad discretion to conclude that the Defendant was a poor candidate for alternative sentencing, having more than thirty prior convictions, including convictions for another aggravated assault and domestic assault committed while the Defendant was free on bail awaiting trial in the instant case, and having her bond revoked for failure to appear. The State contends that this behavior suggests that the Defendant may well re-offend, imperiling future victims. We agree with the State.

Under the Tennessee Criminal Sentencing Reform Act of 1989, the trial court has broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Id.* at 707. In *State v. Caudle*, our Supreme Court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence" 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the Sentencing Act, trial courts are to consider the following factors when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.
(8) The result of the validated risk and needs assessment conducted by the department [of correction] and contained in the presentence report.

T.C.A. § 40-35-210(b) (2019).

Trial courts are "required . . . to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise*, 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). Under the holding in *Bise*, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. T.C.A. § 40-35-114; *see also Bise*, 380 S.W.3d at 701. Moreover, a trial court is "guided by - but not bound by - any applicable enhancement factors when adjusting the length of a sentence [,]" and its "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005" *Bise*, 380 S.W.3d at 706.

Before imposing a sentence of full confinement, the trial court should consider whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103 (1)(A)-(C) (2019). In addition, the sentence imposed should be (1) "no greater than that deserved for the offense committed," and (2) "the least severe measure

5

necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), -103(4). Furthermore, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). The party appealing a sentence bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, *Sentencing Comm'n Cmts*.

In this case, the record reflects that the trial court considered all appropriate principles set forth in T.C.A. § 40-35-210(b). As provided in T.C.A § 40-35-102(6)(A):

> "A defendant who does not fall within the parameters of subdivision (5), and who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary."

The trial court considered imposing an alternative sentence, but gave great weight to considerable evidence to the contrary, including the Defendant's history of criminal convictions; that the Defendant before trial or sentencing failed to comply with the conditions of a sentence involving release into the community; and that the Defendant was on pretrial release in this case when she committed the offenses in yet another aggravated assault and domestic assault, Case No. 19-744. T.C.A. § 40-35-114 (1), (8) and (13). The Defendant does not contest these factors, and the record reflects that they were appropriately applied. The Defendant has fifteen prior felony convictions. She also has twenty-two prior misdemeanor convictions, with at least five involving violence. The trial court noted that it gave great weight to the Defendant's long history of criminal conduct. The trial court also pointed out that the Defendant committed several of her past offenses while on probation.

We conclude that the trial court properly denied an alternative sentence based on its consideration of the appropriate factors. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6